FILED

2010 Sep-16  AM 10:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | | |
|---|---|---|
| ISE INNOMOTIVE SYSTEMS US, INC., | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | **Case No.:  7:08-CV-1859-RDP** |
| v. | } | |
| | } | |
| OL-CI SRL, et al., | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

This case is before the court on Defendant CIMA S.r.l. and Fabio Ceresa's Motion to Dismiss (Doc. #30), filed February 5, 2010. Pursuant to Federal Rule of Civil Procedure 12(b)(2),[1] Defendants argue that exercising personal jurisdiction over them would be improper. For the following reasons, the court concludes that their motion is due to be granted in part and denied in part.

## I.    STANDARD OF REVIEW

## A.    General Principles

Assessing whether the exercise of personal jurisdiction over a nonresident defendant is proper follows a familiar two-step inquiry. First, the court determines "whether the [forum] state's long-arm statute provides jurisdiction." *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598

---

[1] Embedded in the motion, Defendants additionally argue that Plaintiff's breach of contract allegations fail to state a claim upon which relief may be granted. (Doc. #31 at 9-10). The argument, however, is moot for two reasons. First, and most importantly, the court concludes that exercising personal jurisdiction over Defendants Ceresa and CIMA S.r.l. would be improper as to the contract claims; accordingly, making a ruling on the Rule 12(b)(6) component of their argument is unnecessary and premature. Second, and in any event, Plaintiff acknowledges that the error identified by Defendants is merely typographical. (Doc. #34-1 at 26-27). To this point, Defendants concede that Plaintiff's suggested correction would nullify their concern. (Doc. #35 at 15). Therefore, the court expresses no opinion whatsoever as to Defendants' asserted challenge to Plaintiff's contract claims.

F.3d 802, 807 (11th Cir. 2010) (citing *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009)).  Second, assuming that the long-arm statute authorizes the exercise of jurisdiction, the court considers "whether 'the defendant ha[s] minimum contacts with the forum state' and, if it does, whether the district court's exercise of jurisdiction over that defendant would 'offend traditional notions of fair play and substantial justice.'" *Id.* (citing *Internet Solutions Corp.*, 557 F.3d at 1295-96).  Regarding the first prong, under Alabama law, a court may exercise personal jurisdiction over nonresident defendants provided they have "such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States . . . ."  ALA. R. CIV. P. 4.2(b).  Consequently, "the two inquiries merge" because the Alabama long-arm statute stretches to the outer limits of the Due Process Clause.  *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (citing ALA. R. CIV. P. 4.2(b); *Sieber v. Campbell*, 810 So. 2d 641, 644 (Ala. 2001)).  In this forum, therefore, the dispositive issue is whether the nonresident defendant has the requisite minimum contacts with the State of Alabama.

It is possible for a court to have either general or specific jurisdiction over a defendant, and the level of contact necessary to expose the nonresident defendant to personal jurisdiction depends on the relationship between the cause of action alleged and the nonresident defendant's prior activity in the forum.  If a court has general jurisdiction over a nonresident defendant, then the court may "adjudicate any cause of action involving a particular defendant, irrespective of where the cause of action arose.*" Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1221 n.27 (11th Cir. 2009) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.15 (1985); *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1274 (11th Cir. 2002)).  A court acquires general jurisdiction when a

nonresident defendant engages in continuous and systematic activity in the forum. *Nippon Credit Bank, Ltd. v. Matthews*, 291 F.3d 738, 747 (11th Cir. 2002) (citing *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1057 (11th Cir. 1986)).

In contrast, specific jurisdiction "refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum." *Oldfield*, 558 F.3d at 1221 n.27 (citing *McGow v. McCurry*, 412 F.3d 1207, 1214 (11th Cir. 2005)). The exercise of specific jurisdiction requires, first, that the nonresident defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum . . ., thus invoking the benefits and protections of its laws." *Oldfield*, 558 F.3d at 1220 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). More critically, the contacts "with the forum must be related to the plaintiff's cause of action or have given rise to it." *Id.* (citing *Burger King Corp.*, 471 U.S. at 472; *SEC v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997)). If these elements are present, then the nonresident defendant should reasonably anticipate being haled into the forum's courts to answer for its conduct. *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1074 (11th Cir. 1999)).

**B.  Method of Proof**

When considering a motion brought pursuant to Rule 12(b)(2), the court has some discretion as to whether it will conduct an evidentiary hearing or, alternatively, to decide the issue of personal jurisdiction on the basis of only the complaint and submitted evidence. *See Delong Equip Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988) (citing *Edwards v. Associated Press*, 512 F.2d 258, 262 n.8 (5th Cir. 1975); *Spelsberg v. Sweeney*, 514 F. Supp. 622, 623 (S.D. Ga. 1981)). An evidentiary hearing is appropriate "when the jurisdictional facts are not entwined with

the facts as to the merits issues.  When the facts are intertwined, it is usually preferable that the *prima facie* method be followed . . . ."  2 MOORE'S FEDERAL PRACTICE – CIVIL § 12.31 (2010).

When no evidentiary hearing is held and the court resorts to the so-called *prima facie* method, then the "plaintiff must establish a *prima facie* case of personal jurisdiction over a nonresident defendant."  *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 255 (11th Cir. 1996) (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)).  "A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict.  The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits."  *Id.*  In the event that the complaint and the defendant's affidavits conflict, "the district court must construe all reasonable inferences in favor of the plaintiff."  *Id.*; *see also S & Davis Int'l, Inc. v. Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000) ("If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's *prima facie* showing is sufficient notwithstanding the contrary presentation by the moving party.") (quoting *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990)); 2 MOORE'S FEDERAL PRACTICE – CIVIL § 12.31 (2010) ("[E]ven if the court received discovery materials, it should not act as fact-finder and should construe all disputed facts in the plaintiff's favor.  This approach relies on a *prima facie* showing and postpones the necessary factual determinations until trial.").

According to this approach, which does not purport to resolve factual disputes, a court's denial of a Rule 12(b)(2) motion to dismiss is not a final adjudication; rather, the plaintiff maintains the ultimate burden of proving, by a preponderance of the evidence at trial, that jurisdiction is proper.  *See, e.g.*, *N. Laminate Sales, Inc. v. Davis*, 403 F.3d 14, 22-24 (1st Cir. 2005); *see also* 5B FEDERAL PRACTICE & PROCEDURE – CIVIL § 1351 (3d ed. 2010) ("[T]he plaintiff bears the ultimate burden

of demonstrating that the court's personal jurisdiction over the defendant exists by a preponderance of the evidence, but needs only make a *prima facie* showing when the district judge restricts her review of the Rule 12(b)(2) motion solely to the affidavits and other written evidence."). Thus, "[a] party who has unsuccessfully raised an objection under Rule 12(b)(2) may proceed to trial on the merits without waiving the ability to renew the objection to the court's jurisdiction." 5B FEDERAL PRACTICE & PROCEDURE – CIVIL § 1351 (3d ed. 2010).

Furthermore, and in terms of assessing the possibly conflicting evidence submitted, "'when there is a battle of affidavits placing different constructions on the facts, the court is inclined to give greater weight, in the context of a motion to dismiss, to the plaintiff's version . . .,' particularly when 'the jurisdictional questions are apparently intertwined with the merits of the case.'" *Delong Equip. Co.*, 840 F.2d at 845 (quoting *Psychological Res. Support Sys. v. Gerleman*, 624 F. Supp. 483, 486-97 (N.D. Ga. 1985)). Importantly, declarations contained in affidavits must be more than mere conclusions regarding ultimate jurisdictional facts; instead, the affidavits must be genuinely probative. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999) (citing *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994); *Benton-Volvo-Metairie, Inc. v. Volvo Sw., Inc.*, 479 F.2d 135, 139 (5th Cir. 1973)). Thus, "[m]ere averments of jurisdiction are not enough nor may conclusory, unsupported statements contained in accompanying affidavits be relied upon to demonstrate jurisdiction." *Gen. Elec. Credit Corp. v. Scott's Furniture Warehouse Showroom, Inc.*, 699 F. Supp. 907, 910 (N.D. Ga. 1988) (citing *Holfield v. Power Chem. Co., Inc.*, 382 F. Supp. 388, 390 (D. Md. 1974)).

## II.    STATEMENT OF FACTS

Applying the above standards to the pleadings and affidavits on file, the following facts are undisputed or, if disputed, taken in the light most favorable to Plaintiff.

Plaintiff, an Alabama corporation with its principal place of business in Alabama, supplies precision parts to automobile manufacturers. (Doc. #9 ¶¶ 2, 4). Defendant OL-CI S.r.l., an Italian business with its principal place of business in Italy, supplies commercial equipment that manufactures some of the parts that Plaintiff produces and sells. (Doc. #9 ¶¶ 3, 5). Defendant OL-CI S.r.l. sold to Plaintiff various pieces of equipment and sent them to Plaintiff's Alabama facility.[2] (Doc. #9 ¶ 5). Defendant OL-CI S.r.l. sent its own personnel to Alabama for installation and initial support purposes. (Doc. #34-1 at 32).    The invoice price for the equipment sold totaled $492,353.82. (Doc. #9 ¶ 7). Certain equipment, however, failed to meet the required specifications. (Doc. #9 ¶ 6). In particular, the equipment did not adequately perform spot welds, which rendered them unfit for the purposes for which they were purchased. (Doc. #9 ¶ 6). As a result of these defects, Plaintiff suffered losses because its customers began withholding payments due. (Doc. #34-1 at 32). In addition to the complaints regarding the product defects, Plaintiff questioned various invoices, for which it perceived to have been erroneously charged. (Doc. #34-1 at 32). Plaintiff contested approximately $470,000.00 in claimed overcharges. (Doc. #34-1 at 32).

Consequently, around July 29, 2006, Plaintiff contacted Defendant Fabio Ceresa, who represented himself as being the primary United States contact for Defendant OL-CI S.r.l.[3] (Doc.

---

[2]On this record, the court cannot discern whether Plaintiff or Defendant OL-CI S.r.l. initiated the sale.

[3]In response, Defendant Ceresa stated that he "[is] an employee of O.L.C.I. Engineering, S.r.l., which is not a party to this litigation," and that "O.L.C.I. Engineering, S.r.l., and the defendant in this litigation, OL-CI, S.r.l., are separate and distinct companies and do not have any common shareholders." (Doc. #31 at 12-13). First, and most importantly, Defendant Ceresa did not declare that in 2006 (*i.e.*, during the alleged negotiations) he was employed solely

#34-1 at 30-32).  Defendant Ceresa is an adult individual who "resides now and at all times relevant to this action in Italy."  (Doc. #9 ¶ 25).  Plaintiff's agents and Defendant Ceresa exchanged a flurry of e-mails that addressed the various details of the dispute.  (Doc. #34-1 at 31; Doc. #34-1 at 55-76; Doc. #37-1 at 1-2).  According to Plaintiff, Defendant Ceresa represented at all material times that Defendant OL-CI S.r.l. authorized him to act on its behalf as to these settlement negotiations.  (Doc. #34-1 at 31; Doc. #37-1 at 1-2).

As of September 28, 2006, Defendant OL-CI S.r.l., attempting to settle the controversy, agreed to cancel all outstanding receivables (valued at $466,614.00) and issue one new invoice to Plaintiff in the amount of $250,000.00.  (Doc. #9 ¶ 8; Doc. #34-1 at 33).  At that point, however, Plaintiff had not agreed to release Defendant OL-CI S.r.l. from the defective spot welding claims.  (Doc. #34-1 at 33).  Nevertheless, on October 6, 2006, Defendant Ceresa, allegedly acting on behalf of Defendant OL-CI S.r.l., insisted on resolving the spot weld issues, and Plaintiff, assenting to the demand, agreed to settle those matters as well.  (Doc. #34-1 at 33).  That same day, knowing that Defendant OL-CI S.r.l. was undergoing voluntary liquidation,[4] Plaintiff requested that the Italian liquidator approve or, at the very least, sign the proposed agreement.  (Doc. #34-1 at 34, 74).

On October 19, 2006, Defendant Ceresa advised Plaintiff that he had difficulty persuading the Italian liquidator to approve the settlement, but he overcame the liquidator's hesitations by convincing him that settlement was beneficial to Defendant OL-CI S.r.l. insofar as the arrangement

---

by O.L.C.I. Engineering, S.r.l. rather than Defendant OL-CI S.r.l.  Consequently, Defendant Ceresa's declaration is not necessarily in conflict with Plaintiff's evidence.  Second, even if Defendant Ceresa's declaration is in conflict with Plaintiff's evidence, the court must view the evidence in the light most favorable to Plaintiff.  In this case, the evidence in the light most favorable to Plaintiff is that Defendant Ceresa acted as agent on behalf of Defendant OL-CI S.r.l. or, at the very least, held himself out to Plaintiff as having such authority.

[4]Since April 20, 2006, Defendant OL-CI S.r.l. has pursued voluntary liquidation in the Italian court system. (Doc. #31 at 13).  The court appointed Alberto Cerruti as the liquidator.  (Doc. #34-1 at 131).

disposed of the spot welding claims.  (Doc. #34-1 at 34).  Accordingly, Defendant Ceresa informed

Plaintiff that the liquidator required a letter on Plaintiff's official letterhead confirming that the spot

weld issues were included in the final compromise.  (Doc. #34-1 at 34).  On October 20, 2006,

Plaintiff complied and sent to Italy the requested confirmation on official letterhead.[5]  (Doc. #34-1

at 34).

Upon receipt, Defendant Ceresa forwarded to Plaintiff a memorandum summarizing the

terms of the deal.  (Doc. #34-1 at 34-35).  The memorandum, printed on Defendant OL-CI S.r.l.'s

letterhead and stamped with Defendant OL-CI S.r.l.'s legal seal, specified that Defendant OL-CI S.r.l.

would cancel approximately one-half of the outstanding debt, which thereby required Plaintiff to pay

$248,884.62 rather than the original $492,353.82.  (Doc. #34-1 at 35; Doc. #34-1 at 79).  Plaintiff

reviewed the summary and noticed that Defendant OL-CI S.r.l. had erroneously omitted one invoice,

valued at $25,740.00, from the memorandum.  (Doc. #34-1 at 35).  Plaintiff contacted Defendant

Ceresa and requested that the official summary be updated to reflect this omission.  (Doc. #34-1 at

35).

Defendant Ceresa agreed and resubmitted the summary memorandum, again on Defendant

OL-CI S.r.l.'s letterhead and affixed with its legal seal.  (Doc. #34-1 at 35).  According to the updated

---

[5]According to Plaintiff, Vincenzo Lapiccirella identified another letter, dated October 23, 2006, in which Plaintiff supposedly agreed to pay the full value of the receivable without any write-off by Defendant OL-CI S.r.l.  (Doc. #34-1 at 100).  This letter, dated three days after Plaintiff sent a confirmation letter to Defendant OL-CI S.r.l., was printed on Plaintiff's official letterhead and purportedly signed by Plaintiff's plant manager, Andreas Hackstedt.  (Doc. #34-1 at 100).  In response, Plaintiff retained an expert who specializes in document examination.  (Doc. #34-1 at 40).  According to Plaintiff's expert, the October 23, 2006 letter is a "cut-and-paste" production, whereby the forger copies an authentic signature and affixes it to an unauthorized document.  (Doc. #34-1 at 88).  At this juncture, the court need not resolve the question of the October 23, 2006 letter's authenticity.  It is sufficient, for an assessment of preliminary jurisdiction, that Plaintiff has produced evidence suggesting that (1) it did not reaffirm the controverted debt and (2) the October 23, 2006 letter is a forgery.  Moreover, the letter's authenticity heavily weighs on the validity of the supposed settlement, which further counsels against resolving this factual issue on this motion.  In any event, as this is a disputed fact that necessarily implicates the merits of the parties' controversy, the court accepts Plaintiff's version of the events for purposes of resolving the jurisdictional challenge here.

summary memorandum, dated November 3, 2006, Defendant OL-CI S.r.l. agreed to write off $243,469.50, and Plaintiff agreed to pay the adjusted balance owed on the original invoice (*i.e.*, $248,884.32). (Doc. #34-1 at 35; Doc. #34-1 at 85). The agreement included resolution of the spot weld issues. (Doc. #34-1 at 85). That same day, and pursuant to the agreement, Plaintiff paid the settled balance owed to Defendant OL-CI S.r.l. (Doc. #9 ¶ 9).

But nearly two years later, in 2008, Defendant Ceresa informed Plaintiff that he would be in Tuscaloosa, Alabama and requested a meeting regarding the 2006 settlement. (Doc. #34-1 at 37). On July 30, 2008, Defendant Ceresa, along with Italian attorney Vincenzo Lapiccirella, participated in a meeting at Plaintiff's office in Tuscaloosa. (Doc. #34-1 at 38). At the meeting, Lapiccirella advised Plaintiff that he was present to assist Defendants Ceresa and CIMA S.r.l. regarding Plaintiff's unresolved debt to Defendant OL-CI S.r.l. (Doc. #34-1 at 38). In particular, Lapiccirella represented that Plaintiff owed not the purportedly settled value but the full amount on the original invoices. (Doc. #34-1 at 38). Defendants Ceresa and CIMA S.r.l., rather than Defendant OL-CI S.r.l., claimed entitlement to the receivable because, at some point, Defendant OL-CI S.r.l. "assigned to Defendants CIMA SRL and/or Fabio Ceresa, or CIMA SRL and/or Fabio Ceresa . . . purchased, some or all of [Defendant OL-CI SRL's] claim against" Plaintiff. (Doc. #9 ¶ 26).[6] Defendant CIMA S.r.l. is an Italian company with its principal place of business in Italy. (Doc. #9 ¶ 24).

---

[6]Defendants Ceresa and CIMA S.r.l. have produced evidence indicating that Defendant CIMA S.r.l., as of March 5, 2010, has not purchased the disputed receivable. (Doc. #35 at 18). According to the offered declaration, Defendant CIMA S.r.l. signed a contract to purchase the receivable in November 2008 (*i.e.*, after the July 2008 meeting in Alabama), but the transaction has not yet been consummated. (Doc. #35 at 18). In contrast, Plaintiff has responded with evidence suggesting that Lapiccirella represented at least implicitly to Plaintiff at the July 2008 meeting that Defendant CIMA S.r.l., indeed, had purchased the receivable. (Doc. #34-1 at 38). Because the evidence is in conflict and resolution of this issue necessarily implicates the underlying merits of the controversy, the court accepts Plaintiff's version of events solely for the purpose of ruling in the instant motion.

Following the meeting, and after reviewing the settlement documentation as well as the e-mails precipitating the agreement, Lapiccirella and Defendant Ceresa concluded that "some unknown person or persons, purporting to be [Defendant] Ceresa . . . had actually been the sender(s) and receiver(s) of all the numerous e-mails and correspondence which had passed back and forth between 'Fabio Ceresa' . . . and" Plaintiff.[7]  (Doc. #34-1 at 38).  In addition, Lapiccirella and Defendant Ceresa maintained that the Italian liquidator had not approved the proposed agreement, which rendered it unenforceable.  (Doc. #34-1 at 39).  Consequently, according to Lapiccirella, Plaintiff owed to Defendants CIMA S.r.l. and Ceresa the initial purchase price rather than the supposedly compromised value.  (Doc. #34-1 at 38).  Lapiccirella advised Plaintiff that its failure to pay the full amount would result in a lawsuit "with possible heavy consequences."  (Doc. #34-1 at 38).  Lapiccirella did not specify in which forum the legal action would proceed, if at all.  (Doc. #34-1 at 38).[8]

Based on these facts, Plaintiff filed this lawsuit and has asserted against Defendant OL-CI S.r.l. the following causes of action: (1) a request for a declaratory judgment; (2) breach of contract; and (3) misrepresentation.  (Doc. #9 ¶¶ 13-23).  Specifically, Plaintiff requests that this court declare the "rights and other legal relations as between . . . Plaintiff and . . . Defendant" OL-CI S.r.l.,

---

[7]At some point, Lapiccirella and Defendant Ceresa suggested that Plaintiff had forged the e-mails that serve as the basis for the 2006 settlement agreement.  (Doc. #34-1 at 12).  In response, Plaintiff retained an expert regarding the authenticity of the subject e-mails.  (Doc. #34-1 at 12).  According to the expert's examination of the e-mails and attendant data, he concluded that the e-mails "did, in fact, originate at the appropriate times and dates. . . . [and] that the messages came from [Defendant] Ceresa, via a computer server which was, and is today, registered to [Defendant] OL-CI, S.r.l., in Torino, Italy."  (Doc. #34-1 at 40; Doc. #34-1 at 105-09).  At this stage, it is unnecessary for the court to resolve this factual dispute; Plaintiff's production of evidence suggesting authenticity is sufficient.

[8]Lapiccirella denies the accuracy of Plaintiff's version of the July 2008 meeting.  According to Lapiccirella, at that point in time, he did not represent Defendant CIMA S.r.l., although the company eventually retained his services in the Spring of 2009.  (Doc. #35 at 18).  Although Lapiccirella's declaration is in stark contrast to Plaintiff's representation, under the settled standard of review, the court construes the evidence in the light most favorable to Plaintiff.

presumably insofar as the accord and satisfaction is concerned.  (Doc. #9 ¶¶ 13-15).  Regarding the breach of contract claim, Plaintiff contends that Defendant OL-CI S.r.l. violated the terms of the agreement and, therefore, caused Plaintiff damage totaling $243,469.50 (*i.e.*, the alleged written-off balance).  (Doc. #9 ¶¶ 16-18).  Finally, as to the misrepresentation claim, Plaintiff avers that Defendant OL-CI S.r.l. "intentionally or wantonly participated in a scheme to defraud . . . Plaintiff of money or property by means of material misrepresentation."  (Doc. #9 ¶ 20).  Because of this misrepresentation, on which it allegedly relied, Plaintiff suffered injury valued at $243,469.50 (*i.e.*, the alleged written-off balance).  (Doc. #9 ¶¶ 21-23).  Additionally, and by virtue of the assignment or purchase, Plaintiff alleges that Defendants CIMA S.r.l. "and/or" Ceresa "have stepped into the shoes of" Defendant OL-CI S.r.l.  (Doc. #9 ¶ 28).  Accordingly, Plaintiff asserts the same causes of action against Defendants CIMA S.r.l. and Ceresa as it alleged against Defendant OL-CI S.r.l.  (Doc. #9 ¶¶ 24-28).

## III.    DISCUSSION

Defendants have asserted that this court lacks personal jurisdiction over them as to the contract and fraud claims.  Although the parties have not formally divided the personal jurisdiction analyses according to Plaintiff's causes of action, the court concludes that, in this case, separate consideration of *in personam* jurisdiction as to each of the causes of action is appropriate.  *See, e.g.*, *Remick v. Manfredy*, 238 F.3d 248, 255-56 (3d Cir. 2001) ("It may not be necessary to [engage in claim-specific assessments] in every multiple claim case, but because there are different considerations in analyzing jurisdiction over contract claims and over certain tort claims, we believe such differentiation is required here.").  Accordingly, the court evaluates, first, personal jurisdiction

over Plaintiff's contract claims (*i.e.*, the declaratory judgment action and the breach of contract claim) and, second, personal jurisdiction over Plaintiff's fraud claims.

## A.     Personal Jurisdiction over the Contract Claims

Defendant Ceresa argues that even if he was present in Alabama in 2006 as a representative of OL-CI SRL, that fact "does not confer jurisdiction on him personally." (Doc. #25 at 12). In support of this claim, Defendant Ceresa cites to *Callaway v. E.H. Smith Electrical Contractors, Inc.* for the proposition that "an agent is presumed to intend to bind his principal only and to incur no personal liability and unless an intention to substitute or superadd his personal liability for or to that of his principal is clearly shown, he will not be bound in his individual capacity." 814 So. 2d 893, 897 (Ala. Civ. App. 2001) (quoting *Sealy v. McElroy*, 257 So. 2d 340, 350 (Ala. 1972)).[9] Defendant Ceresa accurately suggests that, on balance, "[a]n agent cannot be held liable for his principal's breach of contract." *Miller v. Dobbs Mobile Bay*, 661 So. 2d 203, 205 (Ala. 1995) (citing *Smith v. Equifax Services Inc.*, 537 So. 2d 463 (Ala. 1988)).

The rules of law articulated in *Callaway* and *Miller*, however, presuppose the existence of a valid principal-agent relationship. Indeed, the "general rule . . . concerning liability of an agent for the breach of contract entered on behalf of a disclosed principal is that the agent binds either the principal or himself to the contract, but not both." *Boyce v. Cassese*, 941 So. 2d 932, 949 (Ala. 2006) (quoting *Ricwil, Inc. v. S.L. Pappas & Co.*, 559 So. 2d 1126, 1129 (Ala. 1992)). That is, when a party asserts a breach of contract claim, based on an agreement brokered by an agent purportedly on behalf of the principal, a fundamental question of fact exists as to whether the agent acted with

---

[9]The parties have not addressed whether Alabama, Italian, or some other substantive law governs this dispute. The court assumes without deciding that Alabama law controls, as Defendants have cited to various Alabama cases that articulate rules concerning contract, tort, and agency law. Reference to Alabama caselaw, however, does not foreclose future analysis as to which substantive law governs this case.

actual or apparent authority.  *See, e.g.*, *Shirley v. Lin*, 548 So. 2d 1329, 1333 (Ala. 1989) ("If the agent fails, for lack of authority, to bind the principal, then he is personally liable on the contract.") (citing *Gillis v. White*, 106 So. 166, 167 (Ala. 1925)).

Accordingly, as the Eleventh Circuit has explained, "whether the individual defendant can be held personally liable for acts committed in the forum, not whether his contacts with the forum arose in his personal capacity," *Delong Equip. Co.*, 840 F.2d at 852, is the guiding inquiry as to personal jurisdiction over nonresident corporate agents.  In this case, the parties have devoted substantial attention to whether Defendant Ceresa, in 2006, acted as agent on behalf of Defendant OL-CI S.r.l. and the related consequences of his action in the absence of such authority.  Considering the submitted evidence, there are four possible – albeit conflicting – interpretations bearing on this analysis: *either* (1) an imposter claiming to be Defendant Ceresa negotiated the 2006 settlement; (2) Plaintiff falsified the 2006 documents and e-mails purportedly settling the dispute; (3) Defendant Ceresa, acting on behalf of Defendant OL-CI S.r.l. and at its direction, negotiated the 2006 agreement; *or* (4) Defendant Ceresa, acting without legal authority from Defendant OL-CI S.r.l., negotiated the 2006 agreement.

As already noted, well-settled law requires the court to evaluate the evidence in the light most favorable to Plaintiff.  Applying that standard, the third and fourth scenarios are more favorable interpretations than the first or second, either of which would undercut liability possibly against all Defendants in this case.  The third scenario, on the other hand, weighs in favor of liability against Defendant OL-CI S.r.l., and the fourth, although probably eliminating liability against Defendant OL-CI S.r.l., charges liability to Defendant Ceresa according to the theory that he executed the deal without Defendant OL-CI S.r.l.'s authorization.  *See, e.g.*, *Shirley*, 548 So. 2d at 1333.  Thus, in this

posture and viewing the evidence in the light most favorable to Plaintiff, one interpretation suggests that Defendant Ceresa acted without authority and, thereby, incurred personal liability under a breach of contract theory.  In this regard, Defendant Ceresa's merits-based analysis of personal jurisdiction misses the mark because, as explained, an arguable basis for liability exists insofar as the contract related claims are concerned.

Nevertheless, the possible existence of liability is not necessarily dispositive.  Critically, the underlying dispute in this case concerns the alleged breach of a settlement agreement – not the breach of the underlying sale-of-goods agreement between Plaintiff and Defendant OL-CI S.r.l.  The contacts preceding the settlement negotiations, therefore, are jurisdictionally unrelated in a specific jurisdiction analysis.[10]  *See, e.g.*, *Cem Corp. v. Personal Chemistry, AB*, 55 Fed. App'x 621, 625 (4th Cir. 2003) (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277-78 (7th Cir. 1997); *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 153 (3d Cir. 1996); *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 615 n.5 (8th Cir. 1994)).

As the Seventh Circuit observed, "specific jurisdiction requires that the suit 'arise out of' or 'be related to' these minimum contacts with the forum state.  [The court] cannot simply aggregate all of a defendant's contacts with a state – no matter how dissimilar in terms of geography, time, or substance – as evidence of the constitutionally required minimum contacts."  *RAR, Inc.*, 107 F.3d at 1277.  "Thus, it is the contacts surrounding the . . . settlement . . . that must be the basis for specific personal jurisdiction."  *Cem Corp.*, 55 Fed. App'x at 625.  In this case, and considering the

---

[10]Based on the briefing, the court assumes that Plaintiff relies upon specific jurisdiction.  For example, opening its personal jurisdiction analysis, Plaintiff argues that "[w]hether the activities of defendants CIMA and Ceresa are evaluated under a tort or contract theory, there should be little debate as to whether there has been a 'clear, firm nexus' between the acts of these defendants and the consequences regarding which the plaintiff complains."  (Doc. #34-1 at 18).  Moreover, Plaintiff has not engaged in an overt general jurisdiction analysis; accordingly, the court confines its review to whether the evidence supports the exercise of specific jurisdiction.

contacts surrounding the settlement agreement, Defendant Ceresa, acting allegedly on behalf of Defendant OL-CI S.r.l., lacked the constitutionally adequate contacts with the State of Alabama necessary to authorize the exercise of personal jurisdiction over him.[11]

First, Plaintiff initiated the settlement discussions.  Plaintiff has not produced any evidence or made any allegation to suggest Defendant Ceresa, on behalf of Defendant OL-CI S.r.l., reached into the forum in order to commence negotiations.  On the contrary, Plaintiff contacted Defendant Ceresa in Italy to resolve the predicate dispute.  *See Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 628 (11th Cir. 1994) ("With respect to interstate contractual obligations, we have emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities.") (quoting *Burger King Corp.*, 471 U.S. at 473).  Thus, Plaintiff's unilateral contact with Defendant OL-CI S.r.l., and by extension Defendant Ceresa, counsels against the exercise of personal jurisdiction.  *See Hanson*, 357 U.S. at 253 ("[T]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State . . . .").  Furthermore, even to the extent that Defendant Ceresa reciprocated contact via electronic and standard mail, courts routinely have concluded that such communication,

---

[11] And to be certain, even if, under appropriate circumstances, contacts surrounding the underlying dispute may be aggregated with contacts surrounding the settlement, those circumstances are not present here.  As explained, Defendant Ceresa's contract liability (and, therefore, exposure to personal jurisdiction) turns on whether, in acting *ultra vires*, he bound himself to the settlement agreement.  Plaintiff has not argued, however, that Defendant Ceresa is similarly obligated on the sale-of-goods contract precipitating the settlement.  Indeed, Plaintiff has not even argued that Defendant Ceresa participated in the sale-of-goods transaction.  In that regard, the contacts associated with the equipment contract cannot be linked to Defendant Ceresa, as a principal's acts, without more, are not fairly attributable to its agent for personal jurisdiction purposes. *See, e.g.*, *Ontel Prods. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1148 (S.D.N.Y. 1995) ("[The plaintiff] must show that [the agent] personally took part in the activities giving rise to the action at issue.") (citations omitted).  Thus, even if aggregating contacts is, at times, acceptable, in this case and given the nature of the claim against Defendant Ceresa, the contacts are necessarily distinct, and Defendant OL-CI S.r.l.'s contacts simply cannot be imputed to Defendant Ceresa.

on its own, is insufficient to establish purposeful availment.  *See, e.g.*, *Nicholas v. Buchanan*, 806 F.2d 305, 307-08 (1st Cir. 1986); *Stuart v. Spademan*, 772 F.2d 1185, 1193-94 (5th Cir. 1985).

Second, the settlement terms have a distinctly Italian emphasis.  According to the final communications, Plaintiff agreed not to pursue its spot welding claims against Defendant OL-CI S.r.l. in exchange for their agreement to pay approximately one-half of the initial invoice price. (Doc. #34-1 at 77-79).  The evidence strongly suggests, however, that Defendant OL-CI S.r.l. was unwilling to resolve the invoicing issues absent settlement of the spot welding claims.  (Doc. #34-1 at 33).  Once the parties agreed to the compromise, pursuant to the agreement, Plaintiff performed its obligation by sending payment to Defendant OL-CI S.r.l. in Italy, and Defendant OL-CI S.r.l. enjoyed the benefit of not being sued in an unspecified forum on the product defect claims.

Regarding the release, it is virtually indisputable that Defendants OL-CI S.r.l. and Ceresa were and are subject to jurisdiction in the Italian court system.  Accordingly, Plaintiff's agreement not to pursue its product defect claims, at the very least, waived its ability to pursue those claims in Italy.  But even assuming that personal jurisdiction in Alabama existed over Defendants OL-CI S.r.l. and Ceresa as to the product defect claims, the invoice write-down – not the release – is the present subject of Plaintiff's declaratory action and breach of contract claim.  That component of the settlement, which Plaintiff triggered by remitting payment to Defendant OL-CI S.r.l., additionally occurred in Italy when Defendant OL-CI S.r.l. allegedly canceled several outstanding invoices upon receipt of Plaintiff's payment.  *See, e.g.*, *Baynes v. George E. Mason Funeral Home, Inc.*, No. 07-2805, 2008 U.S. Dist. LEXIS 100075, at *11-12 (N.D. Ga. Dec. 10, 2008) (concluding that personal jurisdiction was absent over nonresident defendant because only a piece of the total transaction occurred in the plaintiff's home forum).

16

Moreover, Plaintiff, knowing that Defendant OL-CI S.r.l. had pursued voluntary liquidation, requested Defendant Ceresa to seek the liquidator's approval as a condition precedent to the settlement's execution. (Doc. #34-1 at 34). Defendant Ceresa complied with Plaintiff's demand and sent an assurance of the performance, which, again, occurred in Italy. (Doc. #34-1 at 74). The presence of an Italian thirty-party, whom Plaintiff perceived as important if not essential to the deal, further buttresses the conclusion that the agreement's connection to Alabama was merely incidental.

In short, Plaintiff has not identified a single element of the agreement that required Defendant OL-CI S.r.l. to take action in or aimed at Alabama and, thereby, avail itself of the benefits of transacting business here. *See Sloss Indus.*, 488 F.3d at 933 (concluding that personal jurisdiction existed because, *inter alia*, nonresident defendant requested the resident plaintiff to manufacture goods and to ship them out of the forum). At best, Defendant OL-CI S.r.l., allegedly through Defendant Ceresa, accepted the right not to be sued in any forum, including Alabama, on the spot weld claims. But an agreement conferring a defense to liability – the use of which wholly depended on whether Plaintiff decided to pursue judicial relief in an undetermined court system – is a floating contingency and, therefore, not the level of contact which is constitutionally sufficient to compel judicial participation in a foreign forum.

Indeed, the settlement agreement, as a practical matter, ended the parties' commercial relationship as opposed to initiating "continuing and wide-reaching" contacts with Plaintiff in Alabama. *Burger King Corp.*, 471 U.S. at 479-80; *see also Railcar, Ltd. v. S. Ill. Railcar Co.*, 42 F. Supp. 2d 1369, 1374-75 (N.D. Ga. 1999) (concluding that a contractual relationship, "discrete in time and scope," did not support the exercise of jurisdiction over the nonresident defendant). Thus, rather than beginning an interconnected commercial relationship focused in Alabama, the settlement

17

agreement, although preceded by numerous e-mail and letter exchanges, reflects a single event: invoice cancellation in exchange for release of product defect claims.  In this regard, Defendant OL-CI S.r.l., through its supposed agent Defendant Ceresa, "purchased" Plaintiff's cause of action through settlement.  But the Eleventh Circuit has acknowledged, in an analogous context, that "a mere one-time purchaser of goods from a seller in the forum state cannot be constitutionally subject to the exercise of personal jurisdiction by the courts of the forum state." *Borg-Warner Acceptance Corp.*, 786 F.2d at 1059.  The settlement agreement, therefore, which (1) terminated the parties' commercial relationship and (2) reflected essentially a single-purchase transaction, albeit incidental to the predicate dispute, is insufficient to invoke this court's jurisdiction because it does not establish that Defendant Ceresa, allegedly on behalf of Defendant OL-CI S.r.l., purposefully availed himself of the benefits of doing business in Alabama.

Thus, Defendants OL-CI S.r.l. and Ceresa, at the time of the agreement, may have been amenable to suit in Alabama as to the product defect claims,[12] but the crux of the purported settlement agreement's performance centered on Italy because: (1) Plaintiff sent a message to Italy requesting discussions regarding possible settlement; (2) Plaintiff sent payment to Italy; (3) Plaintiff agreed not to sue Defendant OL-CI S.r.l. in any forum, including an Italian court; and (4) Plaintiff requested that Defendant Ceresa secure the Italian liquidator's approval of the agreement. Amplifying this Italian-centric conclusion, the parties did not include in their agreement a forum selection clause or a choice-of-law provision, either of which possibly could have weighted the scale slightly in favor of Alabama jurisdiction.  *See, e.g.*, *Alexander Proudfoot Co. World Headquarters L.P. v. Thayer*, 877 F.2d 912, 921 (11th Cir. 1989) ("The enforcement of an agreement conferring

---

[12]The court assumes without deciding the accuracy of this proposition.

jurisdiction does not offend due process where the provision is freely negotiated and not unreasonable or unjust.") (citations omitted); *TRS & Assocs., Inc. v. Document Imaging Techs., Inc.*, No. 08-3264, 2009 U.S. Dist. LEXIS 76705, at *22 (N.D. Ga. Aug. 25, 2009) ("A choice of law clause is relevant to the personal jurisdiction analysis, although not conclusive alone.") (citing *Burger King Corp.*, 471 U.S. at 482).

Although "the existence of jurisdiction in one forum does not necessarily negate the existence of jurisdiction in another forum," *Dole Food Co. v. Watts*, 303 F.3d 1104, 1113 (9th Cir. 2002), in this case, there is simply no connection between the terms of the agreement and the State of Alabama aside from Plaintiff's principal place of business.  It is axiomatic, however, that the residence of a party to a contract is insufficient, on its own, to support the exercise of jurisdiction over a nonresident defendant.  *See Burger King Corp.*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's forum, we believe the answer clearly is that it cannot.").  Thus, the settlement, – again, as distinguished from the sale-of-goods contract – does not authorize this court to exercise jurisdiction over Defendant Ceresa insofar as the contract claims are concerned because it placed the focus on Italy rather than Alabama.

Defendant CIMA S.r.l.'s exposure to personal jurisdiction is similarly absent.  Defendant CIMA S.r.l. purchased the disputed receivable from Defendant OL-CI S.r.l.  (Doc. #9 ¶ 26).  Even assuming that this court may exercise personal jurisdiction over Defendant OL-CI S.r.l. based on the underlying contract, as superseded by the settlement agreement, "an assignee does not automatically step into the shoes of the assignor for purposes of personal jurisdiction; instead, personal jurisdiction must be based on the assignee's own acts." *Harbor Cold Storage, LLC v. Strawberry Hill, LLC*, No.

19

09-1252, 2009 U.S. Dist. LEXIS 103995, at *11 (W.D. Wash. Nov. 9, 2009) (citing *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 784 (7th Cir. 2003); *Moxie Java Int'l, LLC v. Cornucopia Beverages, Inc.*, No. 07-535, 2009 U.S. Dist. LEXIS 4984, at *3-4 (D. Idaho Jan. 23, 2009); *Lobatto v. Berney*, No. 98-1984, 1999 U.S. Dist. LEXIS 13224, at *8 (S.D.N.Y. Aug. 26, 1999)). "[A] general rule that imputes the assignor's forum contacts to the assignee would, at least in some cases, violate the established norms of due process." *Purdue Research Found.*, 338 F.3d at 784. This approach accords with the Supreme Court's "emphasis on the need for an individual assessment of a particular defendant's contacts with the forum state . . . ." *Id.*

In this case, neither party has submitted a copy of the assignment agreement for the court's consideration – Plaintiff has alleged only that Defendant OL-CI S.r.l. assigned its payment right to Defendant CIMA S.r.l.[13]  Consequently, it is uncertain that Defendant CIMA S.r.l., on the basis of only an assignment, would have foreseen being subject to the jurisdiction of a court in this State,[14]

---

[13]In the Complaint, Plaintiff has alleged that Defendant OL-CI S.r.l. assigned the payment rights to Defendant CIMA S.r.l. "and/or" Defendant Ceresa. (Doc. #9 ¶ 26). In response, Defendants CIMA S.r.l. and Ceresa offered specific evidence countering this allegation. (Doc. #35 at 18). Although Plaintiff has submitted evidence tending to suggest that Defendant CIMA S.r.l. owns an interest in the disputed receivable, it seems Plaintiff has abandoned any suggestion that Defendant Ceresa purchased or was assigned such rights. (Doc. #34-1 at 38). Indeed, Plaintiff has not argued in its brief that Defendant Ceresa is an assignee under the agreement: "When [Defendant Ceresa] and Mr. Lapicirella came to Alabama in July of 2008, stating that they were here to review records of the ISE-OLCI settlement, *acting on behalf of CIMA, S.r.l.*, both defendants Ceresa and CIMA should have reasonably expected that they might be haled into an Alabama state or federal court in connection with such activities." (Doc. #34-1 at 16) (emphasis added). Accordingly, the court considers only whether Defendant CIMA S.r.l. has the requisite minimum contacts as assignee to the agreement.

[14]Without elaboration, Plaintiff suggests that "in view of the close relationship between OL-CI and [D]efendant Ceresa, CIMA, S.r.l. cannot legitimately claim it was a 'good faith purchaser' of the OL-CI receivable (with no notice of the prior settlement or any available defenses) when it allegedly purchased it in November of 2008." (Doc. #34-1 at 23). In support of this claim, Plaintiff presumably relies on the Affidavit of Eurialo Felici which states that, as of February 25, 2010, Defendant CIMA S.r.l. is one of Defendant OL-CI S.r.l.'s "current" shareholders, and Defendant Ceresa is one of Defendant CIMA S.r.l.'s "current" shareholders. (Doc. #34-1 at 130-31). Nevertheless, this evidence is unrelated to whether, at the time of the assignment, Defendant CIMA S.r.l. would have foreseen being hailed into an Alabama court to defend the validity of the subject receivable. The shareholder composition as of February 25, 2010 (*i.e.*, nearly two years after Defendant CIMA S.r.l. purchased the right to payment, according to Plaintiff) does not factually establish Defendant CIMA S.r.l.'s reasonable expectations as of the time of the assignment. Thus, the court reiterates the general rule: an assignment, without more, is an insufficient jurisdictional predicate.

and consistent with the Supreme Court's insistence on context in jurisdictional analyses, a mere assignment, without more, is insufficient to transfer Defendant OL-CI S.r.l.'s purported *in personam* exposure to Defendant CIMA S.r.l. *See Purdue Research Found.*, 338 F.3d at 784. And to be sure, Plaintiff has not located any authority for the contrary conclusion. Accordingly, whether this court may exercise personal jurisdiction over Defendant CIMA S.r.l. depends on whether Defendant CIMA S.r.l. has contacts with this forum, independent of the assignment, sufficient to satisfy due process rigors.

Plaintiff has identified only a single contact by Defendant CIMA S.r.l. and related to the contract dispute. According to Plaintiff's allegations and evidence, Defendant CIMA S.r.l., through its agent Vincenzo Lapiccirella, attempted to collect on the underlying debt allegedly owed. A single attempt at collection of a debt, however, does not indicate the sort of purposeful availment necessary to subject a nonresident defendant to personal jurisdiction.

Only in one limited class of cases have courts concluded that attempts at collecting on a debt constitute purposeful availment sufficient to exert personal jurisdiction. Specifically, when a plaintiff alleges a violation of the Fair Debt Collection Practices Act against a nonresident defendant, courts have held that the collection efforts in the forum suffice for the purpose of personal jurisdiction. *See, e.g.*, *Featerston v. HSBC Card Servs., Inc.*, No. 09-3940, 2010 U.S. Dist. LEXIS 80056, at *4-7 (S.D. Tex. Aug. 9, 2010). This approach accords with the principle undergirding specific jurisdiction, which requires the basis for jurisdiction to be related to the asserted cause of action. Indeed, as one court observed in the context of FDCPA claims, "[the plaintiff's] allegations, if proven, would constitute violations of [the FDCPA] by [the defendant] occurring in the State of Ohio. As such, for purposes of this inquiry, [the defendant] has necessarily availed himself of the

21

privilege of acting in this state." *Vlach v. Yaple*, 670 F. Supp. 2d 644, 649 (N.D. Ohio 2009) (citations omitted); *see also Maloon v. Schwartz, Zweban & Slingbaum, L.L.P.*, 399 F. Supp. 2d 1108, 1112 (D. Haw. 2005) ("The defendant has purposefully availed itself of this forum by sending a debt collection letter, allegedly in violation of the FDCPA, to plaintiff in Hawaii.").

On the other hand, when the debt collection does not form the basis of the cause of action, then such efforts, at minimum, must closely relate to the underlying claim. *See, e.g.*, *Wichita Falls Builders Wholesale, Inc. v. Jacor Cos., Inc.*, No. 01-196, 2003 U.S. Dist. LEXIS 1860, at *17-18 (N.D. Tex. Feb. 7, 2003) (concluding that the defendant, which was an initial party to the disputed contracts, had purposefully directed activity in the forum because "[t]he subsequent collection efforts are related to the contracts underlying Plaintiff's cause of action"). Accordingly, if the nonresident defendant's collection efforts are ancillary to the dispute, then the exercise of personal jurisdiction would violate due process.

Relatedly, in *Cascade Corp. v. Hiab-Foco AB*, the Ninth Circuit illustrated that, in the analogous context of demand letters, a communication sent into the forum and threatening the exercise of legal rights does not authorize the exertion of personal jurisdiction. 619 F.2d 36 (9th Cir. 1980). Specifically, in *Cascade Corp.*, the plaintiff preemptively filed a lawsuit requesting a declaration of non-infringement as to a patent owned by the defendant. *Id.* at 36. As a basis for exercising personal jurisdiction over the nonresident defendant, the plaintiff alleged that "[o]n two occasions in 1969 and on one occasion in 1975 representatives of defendant visited [the plaintiff's forum] . . ." and "[s]tarting in 1972 a number of letters were written by the defendant to the plaintiff contending that plaintiff was infringing defendant's patent." *Id.* at 37. Nevertheless, the Ninth Circuit affirmed the district court's decision not to exert personal jurisdiction because doing so

"would offend traditional notions of fair play and substantial justice." *Id.* at 38 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)).

Since *Cascade Corp.*, other courts have reached the same conclusion – a demand letter (or a series of them), on its own, is insufficient to confer personal jurisdiction over a nonresident defendant because asserting a claimed right (1) is tenuously connected to the plaintiff's cause of action and, correspondingly, (2) does not demonstrate purposeful availment. *See, e.g.*, *The Cadle Co. v. Schlichtmann*, 123 Fed. App'x 675, 681 (6th Cir. 2005) (concluding that a demand letter sent by attorney to Ohio is insufficient to establish personal jurisdiction); *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000) (concluding that a letter outlining possible claims against the defendant is insufficient to establish purposeful availment); *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983) ("It is difficult to characterize [the defendant's] letter alleging infringement in an unspecified locale and threatening litigation in an unspecified forum as an activity invoking the 'benefits and protections' of New York law."); *StayWell Co. v. Wang*, No. 06-1726, 2006 U.S. Dist. LEXIS 60363, at *9-10 (E.D. Pa. Aug. 25, 2006) (concluding that a demand letter is an insufficient basis for personal jurisdiction); *Thousand Trails, Inc. v. Foxwood Hill Prop. Owners Ass'n, Inc.*, No. 98-2843, 1999 U.S. Dist. LEXIS 3820, at *7-8 (N.D. Tex. Mar. 23, 1999) ("[T]he nonresident defendant's action in sending a demand letter to the plaintiff is insufficient to create personal jurisdiction."); *Unistrut Corp. v. Baldwin*, 815 F. Supp. 1025, 1027 (E.D. Mich. 1993) ("Plaintiffs contend that the fact that defendant sent into Michigan letters and telefax transmissions threatening to bring suit is sufficient by itself to establish specific personal jurisdiction. The court disagrees."); *Ryobi Am. Corp. v. Peters*, 815 F. Supp. 172, 176 (D.S.C. 1993) (rejecting the theory that a demand letter is a valid basis for exerting personal jurisdiction); *Medeco Sec. Locks,*

23

*Inc. v. Fichet-Bauche*, 568 F. Supp. 405, 408 (D. Va. 1983) ("In this case, the mailing of the letter to [the plaintiff] at its Virginia offices alone is not a contact significant enough to warrant the exercise of *in personam* jurisdiction.").

Here, the court concludes that Defendant CIMA S.r.l.'s contacts are more analogous to the demand letter cases than to the FDCPA cases. Aside from the fraud claims discussed *infra*, Plaintiff has not asserted that Defendant CIMA S.r.l.'s collection efforts relate to the validity of the underlying contract. This case, therefore, does not present the issue that arises in the FDCPA cases where the collection efforts form the basis for liability and, consequently, tip the scale in favor of finding purposeful direction toward the forum. Indeed, Defendant CIMA S.r.l.'s attempts at collection do not affect the enforceability of the settlement agreement allegedly reached by Plaintiff and Defendant OL-CI S.r.l., which strongly weighs against exercising personal jurisdiction. *See Licciardello v. Lovelady*, 544 F.3d 1280, 1285 n.3 (11th Cir. 2008) ("[I]t is not enough that there be some similarity between the activities that connect the defendant to the forum and the plaintiff's claim."). Accordingly, because Defendant CIMA S.r.l. merely asserted a claimed right and threatened legal action in an unspecified judicial forum,[15] the court concludes that the letters sent to Plaintiff are an insufficient demonstration of purposeful availment.

Finally, although Defendant CIMA S.r.l. "reached into the forum" to collect on a debt, the location of the debt is not the consequence of Defendant CIMA S.r.l.'s decision. Specifically, the receivable assigned to Defendant CIMA S.r.l. is the product of a sale-of-goods contract between

---

[15]According to Plaintiff, Lapiccirella sent "threatening e-mails to [Plaintiff's agent]," and the communications demanded payment "or be subjected to legal proceedings with dire consequences." (Doc. #34-1 at 43). Plaintiff has not submitted copies of these e-mails to the court. The threat of litigation, however, in an unspecified forum does not establish that Defendant Ceresa S.r.l. should have reasonably anticipated being hailed into an Alabama court to defend the validity of the receivable on which it attempted to collect. *See, e.g.*, *Beacon Enters., Inc.*, 715 F.2d at 766.

Plaintiff and Defendant OL-CI S.r.l.  When Defendant CIMA S.r.l. purchased the receivable, with an allegedly outstanding balance, it incurred a right to payment without a corresponding duty to perform.  In short, from Defendant CIMA S.r.l.'s perspective, it purchased from Defendant OL-CI S.r.l., another Italian company, only a right to payment.  But Plaintiff has not argued or submitted evidence suggesting that Defendant CIMA S.r.l. purchased the receivable solely or even partially because of Plaintiff's location in Alabama.  Indeed, the more plausible explanation is that the right to payment – rather than the location of the debtor – was the basis of the bargain between Defendants OL-CI S.r.l. and CIMA S.r.l.  In this regard, Defendant CIMA S.r.l.'s post-assignment collection efforts are properly understood as "random, fortuitous, [and] attenuated," *Burger King Corp.*, 471 U.S. at 475, to the State of Alabama.  *See, e.g.*, *PNC Bank, Nat'l Ass'n v. ICOE, Ltd.*, No. 07-992, 2009 U.S. Dist. LEXIS 35698, at *8 (D. Ind. Mar. 23, 2009) (concluding that the purchase of a receivable is the "kind of tangential connection [which] does not make it reasonable to subject [the nonresident defendant] to suit in [the plaintiff's forum]").  Exercising a right, which Defendant CIMA S.r.l. purportedly purchased in Italy, in the forum in which Defendant OL-CI S.r.l. created it, does not suggest that Defendant CIMA S.r.l. purposefully directed its activities here.  Accordingly, the court concludes that exercising jurisdiction over Defendant CIMA S.r.l. would violate due process.

**B.    Personal Jurisdiction over the Fraud Claims**

Plaintiff alleges that Defendants Ceresa and CIMA S.r.l. perpetrated a fraud.  (Doc. ¶¶ 19-28).  Plaintiff further elaborates on this allegation: "Ceresa and CIMA have engaged in fraudulent behavior by: (a) denying Ceresa's initial and continuing involvement in a scheme to defraud [Plaintiff]; (b) attempting to use a forged instrument to extract the payment of money or property

from [Plaintiff]; and (c) affirmatively alleging that [Plaintiff] had, itself, constructed and then used forged e-mails in its business dealings." (Doc. #34-1 at 25).[16]  Additionally, Plaintiff suggests that Defendant Ceresa is liable for fraud because he "misrepresented his authority in the earlier negotiations between [Plaintiff] and [Defendant OL-CI S.r.l.], and he actually obtained no approval of settlement from the liquidator." (Doc. #34-1 at 18).  In response, Defendant Ceresa argues that he cannot be held liable for these acts because, assuming the accuracy of Plaintiff's evidence, he committed them in his capacity as agent for either Defendant OL-CI S.r.l. or CIMA S.r.l.  (Doc. #35 at 12-13).

But insofar as Plaintiff's cause of action sounds in tort rather than contract, "[i]n Alabama, as in most states, the general rule is that officers or employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting within their corporate authority." *Candy H. v. Redemption Ranch, Inc.*, 563 F. Supp. 505, 513 (M.D. Ala. 1983) (citing *Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 907 (1st Cir. 1980); *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978); *Donner v. Tams-Witmark Music Library, Inc.*, 480 F. Supp. 1229, 1233 (E.D. Pa. 1979); *Chandler v. Hunter*, 340 So. 2d 818, 822 (Ala. Civ. App. 1976)); *see also HomeBingo Network, Inc. v. Chayevsky*, 428 F. Supp. 2d 1232, 1246 n.14 (S.D. Ala. 2006) ("Given an agent's unquestionable liability for his own torts even if performed on a principal's behalf, it would be a peculiar result, indeed, if an agent's contacts with a forum state on a principal's

---

[16]Defendants Ceresa and CIMA S.r.l. additionally argue that Plaintiff's fraud claim is infirm because Plaintiff "obviously did nothing in response other than file this lawsuit . . . ." (Doc. #35 at 12-13).  This argument, however, properly is considered in terms of the merits rather than the exercise of preliminary jurisdiction.  Whether Plaintiff has stated a *successful* claim, tested against the evidence, is an analytically distinct inquiry as compared to the question of whether Plaintiff has stated a *cognizable* claim, sufficient to invoke personal jurisdiction over a nonresident defendant.  Accordingly, the court assumes for the limited purpose of this decision that Plaintiff's fraud claim is cognizable, at least based on the Complaint, and no opinion whatsoever is expressed as to the merits of Plaintiff's cause of action for fraud.

behalf were deemed not to 'count' against the agent for purposes of personal jurisdiction."); *S. Ala. Pigs, LLC v. Farmer Feeders, Inc.*, 305 F. Supp. 2d 1252, 1260 (M.D. Ala. 2004) ("Officers may be subject to personal jurisdiction, though, if they have committed torts in Alabama, regardless of whether they acted within their corporate authority at the time the tort was committed.").

Indeed, in this Circuit, the law is well-settled that personal jurisdiction may be exercised over a nonresident defendant "who commits an act in the forum for which he can be held substantively liable, even if his actions in and contacts with the forum were entirely in his capacity as a corporate officer or director." *Delong Equip. Co.*, 840 F.2d at 852. Accordingly, "[i]f substantive liability can extend to an individual for acts performed on behalf of a corporation, then the individual is amenable to the forum's long-arm statute, at least in situations where the nonresident individual physically was present in the forum when he participated in the tort." *Id.* This approach coincides with the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), which sets the relevant parameters for personal jurisdiction in the context of intentional tort claims. Indeed, when considering a tort claim, the relevant analysis is not the traditional *International Shoe* framework and its attendant focus on minimum contacts; instead, *Calder* governs the exercise of personal jurisdiction. *See, e.g.*, *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995); *see also Licciardello*, 544 F.3d at 1286 (approvingly citing the *Ziegler* conclusion).

In *Calder*, the Supreme Court held that the defendants' "intentional conduct in Florida calculated to cause injury to [the plaintiff] in California" warranted the exercise of personal jurisdiction in California over the nonresident Florida defendants. 465 U.S. at 791. The Eleventh Circuit distilled the so-called *Calder* effects test in the following formulation: "the commission of an intentional tort, expressly aimed at a specific individual in the forum whose effects were suffered

in the forum" authorizes the exercise of personal jurisdiction over the nonresident. *Licciardello*, 544 F.3d at 1288.

In this case, Plaintiff suggests that Defendants Ceresa and CIMA S.r.l. made fraudulent statements and aimed their effects at Plaintiff in Alabama.  Specifically, Plaintiff has offered evidence that the supposedly fraudulent statements were sent to Alabama via standard and electronic mail as well as through oral statements made at the July 2008 meeting in Tuscaloosa.  Accordingly, because Plaintiff has produced evidence suggesting that Defendants Ceresa and CIMA S.r.l.[17] perpetrated a fraud aimed at Plaintiff in Alabama, this court may exercise personal jurisdiction over them insofar as the fraud claim is concerned.  Moreover, Defendants Ceresa and CIMA S.r.l., though its agent Lapiccirella, were physically present in Alabama when they made many of the allegedly fraudulent statements.  (Doc. #34-1 at 37-38).  Although expressly aiming tortious conduct at the forum is constitutionally sufficient under *Calder*, their physical presence reinforces the conclusion that exercising personal jurisdiction is proper.  *See Delong Equip. Co.*, 840 F.2d at 852.[18]

---

[17]An open question of fact concerns whether Lapiccirella was acting on behalf of Defendant CIMA S.r.l.  As discussed more fully above, Lapiccirella stated that Defendant CIMA S.r.l. did not retain his services until after the events giving rise to this litigation occurred.  (Doc. #35 at 18).  Resolution of this factual matter will have a substantial impact on the final determination of personal jurisdiction.  Indeed, an agent's contacts with the forum cannot be imputed to the principal absent a valid agency relationship. *See, e.g.*, *25 CP, LLC v. Firstenberg Mach. Co.*, No. 09-80, 2009 U.S. Dist. LEXIS 115194, at *33-34 (D.N.H. Dec. 8, 2009); *Meterlogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp. 2d 1346, 1354-57 (S.D. Fla. 2000) (analyzing agency relationship to determine whether to impute agent's exposure to personal jurisdiction to principal).  At this stage, therefore, the court merely concludes that, based on Plaintiff's evidentiary submission and viewing the evidence in the light most favorable to Plaintiff, Lapiccirella committed the allegedly tortious conduct on behalf of Defendant CIMA S.r.l. and in the scope of his agency relationship, which is sufficient to confer personal jurisdiction on Defendant CIMA S.r.l.

[18]Finally, the Due Process Clause demands that the exercise of personal jurisdiction comports "with fair play and substantial justice." *Licciardello*, 544 F.3d at 1288 (citing *Int'l Shoe*, 326 U.S. at 320).  The parties have not seriously considered or addressed this aspect of the analysis.  Nevertheless, as the Eleventh Circuit has recognized, if jurisdiction is predicated on the nonresident defendant's tortious conduct that was expressly aimed at the forum, the Due Process Clause authorizes the exercise of jurisdiction over the nonresident. *Licciardello*, 544 F.3d at 1288; see also *Calder*, 465 U.S. at 790 ("An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.").  Thus, because (1) Plaintiff has alleged that Defendants Ceresa and CIMA S.r.l. engaged in intentionally tortious conduct expressly aimed at Plaintiff in Alabama and (2) neither Defendant has offered any reason that "fair play and substantial justice" trump the exercise of jurisdiction

**IV.     CONCLUSION**

For the above-stated reasons, Defendants CIMA S.r.l. and Ceresa's Motion to Dismiss is due to be granted in part and denied in part.  To the extent that Plaintiff has asserted contract related claims against Defendants CIMA S.r.l. and Ceresa, those claims are due to be dismissed for lack of personal jurisdiction.  In contrast, Plaintiff's fraud claims against Defendants CIMA S.r.l. and Ceresa are sufficient, at least preliminarily, to invoke personal jurisdiction.  A separate order will be entered consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this _____16th_____ day of September, 2010.

_____

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

in this case, the court concludes that Defendants Ceresa and CIMA S.r.l. are exposed, as least preliminarily, to this court's *in personam* jurisdiction.